UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RYAN CHRISTOPHER RICHARD                                CIVIL ACTION

VERSUS                                                  NO. 24-496-RLB

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION

## ORDER

Ryan Christopher Richard ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g). (R. Doc. 1). Having found all the procedural prerequisites met, this Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); *see also* 20 C.F.R. § 404.981. For the reasons given below, the Court orders that the Commissioner's decision be **VACATED** and that Plaintiff's appeal be **REMANDED** for further proceedings consistent with this Order.

**I.     PROCEDURAL HISTORY**

On September 3, 2020, Plaintiff filed a Title II application for disability benefits, and on September 22, 2020, Plaintiff filed a Title XVI application for supplemental security income. (Tr. 208; 210; 423; 473). Plaintiff alleged his disability—a combination of discogenic and degenerative back problems, depression, and anxiety—had a date of onset of March 31, 2020. (Tr. 473; 488; 513; 516). Although it was recognized that Plaintiff's impairments were spine disorders and depressive, bipolar, and related disorders, Plaintiff's claims were denied initially on August 9, 2021, and were denied again, upon reconsideration, on July 21, 2022. (Tr. 183; 191; 212). As a result, Plaintiff filed a request for a hearing on July 27, 2022, and it was set for December 7, 2022. (Tr. 270; 316). Administrative Law Judge Charlotte White ("Judge White") attempted to conduct the hearing on December 7, 2022, but it was rescheduled to January 4,

1

2023 due to technical difficulties. (Tr. 104; 122; 124). At the January 4, 2023 hearing, Plaintiff's attorney alleged a new onset date of August 7, 2019. (Tr. 89). Following this hearing, however, Judge White became unavailable, and the case was reassigned to Judge Michael Hertzig ("Judge Hertzig"). (Tr. 56-57). Judge Hertzig held a supplemental hearing on August 23, 2023, but, as Plaintiff failed to attend, it was eventually rescheduled to October 26, 2023. (Tr. 24; 56).

Plaintiff, Plaintiff's attorney, Ashok Khushalani, MD ("Dr. Khushalani"), and vocational expert Kasey Crawford appeared at the hearing on October 26, 2023. (Tr. 24). Judge Hertzig published his decision on December 18, 2023, holding that, although Plaintiff had severe major depressive disorder, recurrent generalized anxiety disorder, alcohol use disorder, and disorders of the spine, Plaintiff was not disabled because Plaintiff was found to be capable of working when he stopped abusing drugs. (Tr. 130-151). The Appeals Council, on April 19, 2024, denied Plaintiff's January 15, 2024 request for review of the December 18, 2023 Administrative Law Judge ("ALJ") decision. (Tr. 1; 5). Plaintiff filed his Complaint on June 18, 2024 (R. Doc. 1).

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence to support the findings of the ALJ and (2) whether the correct legal standards were applied. *See Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992); *see also Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is defined as less than a preponderance but "more than a mere scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa,* 895 F.2d at 1022. The Fifth Circuit has held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous

absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations and citations omitted). The Court may not reweigh evidence, try issues *de novo,* or substitute its judgment for that of the Commissioner. *See Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (quoting 42 U.S.C. § 405 (g)). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ'S DETERMINATION

To qualify for benefits, the claimant must establish that he is disabled within the meaning of the Social Security Act (the "SSA"). *See Herron v. Bowen,* 788 F.2d 1127, 1131 (5th Cir. 1986). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders,* 914 F.2d at 618.

The Commissioner (through an ALJ) applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he is not currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves his impairments meet or are medically equivalent

3

to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); *see also* 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. *See* 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the ALJ to prove, considering the claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *See* 20 C.F.R § 404.1520(g)(1). If the ALJ proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *See Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ made the following determinations:

1. The claimant engaged in substantial gainful activity during the following periods: August 7, 2019, the amended alleged onset date, to March 31, 2020, the original alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

2. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period, the claimant did not engage in substantial gainful activity.

3. The claimant has the following severe impairments: Major Depressive Disorder, recurrent, Generalized Anxiety Disorder, Alcohol Use Disorder, and Disorders of the spine (20 CFR 404.1520(c) and 416.920(c)).

4. Even with the claimant's substance use, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that based on all of the impairments, including the claimant's substance use, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk 4 hours of an 8-hour workday; never climb ladders, ropes, scaffolds, occasionally stoop and occasionally crouch; can understand, remember, and carry out one and two-step instructions; occasionally interact with the general public; and can frequently maintain attention and concentration.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant is a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments (20 CFR 404.1522 and 404.922).

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(f) and 416.994(b)(5)(i)).

13. After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance use, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk 4 hours of and 8-hour workday; never climb ladders, ropes, scaffolds, occasionally stoop and occasionally crouch; understand, remember, and carry out one to two step instructions; and occasionally interact with the general public.

14. The claimant is still unable to perform past relevant work (20 CFR 404.1565 and 416.965).

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

17. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

## IV.   DISCUSSION

This dispute primarily concerns the ALJ's determination of the Plaintiff's RFC when the Plaintiff had achieved sobriety, and whether substantial evidence supports the lack of certain previously recognized limitations.

The ALJ's determination that Plaintiff was not disabled while sober was dependent on the difference between (i) the RFC he found Plaintiff had when suffering from substance abuse and (ii) the RFC he concluded Plaintiff had when sober. Plaintiff argues that the ALJ failed to provide a rational basis for why Plaintiff's substance abuse RFC and sober RFC were so similar.[1] Plaintiff's substance abuse RFC states he "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk 4 hours of an 8-hour workday; never climb ladders, ropes, scaffolds, occasionally stoop and occasionally crouch; can understand, remember, and carry out one and two-step instructions; occasionally interact with the general public; and can frequently maintain attention and concentration." (Tr. 136). Plaintiff's sober RFC states that he "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk 4 hours of and 8-hour workday; never climb ladders, ropes, scaffolds, occasionally stoop and occasionally

---

[1] Plaintiff also asserts that the ALJ erred in not providing specific medical record citations when determining that Plaintiff did not meet Criteria C of the Listing section while suffering from substance abuse. While the ALJ must consider all the evidence, he need not "specifically cite each and every piece of medical evidence considered" and the failure to do so "does not establish an actual failure to consider the evidence." *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)). Plaintiff argues, without citing to any evidence, that "[t]he record documents many more years than two of mental health disturbances" and that, "[n]one of the records since the claimed onset date supported the ALJ's statement that the Plaintiff did not have 'marginal adjustment' in the relevant years, as all these records indicate the Plaintiff's records included inpatient hospitalization in the relevant period." (R. Doc. 17 at 7, 8). Plaintiff does not cite specific testimony, medical opinions, or other evidence to demonstrate that the ALJ erred in his findings. It is Plaintiff's burden to demonstrate that he meets or equals a Listing section. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (stating that the claimant bears the burden on the first four steps). Plaintiff has not met his burden. *Boyd v. Kijakazi,* No. CV H-22-320, 2023 WL 2590960, at *7 (S.D. Tex. Mar. 21, 2023) (where plaintiff failed to challenge any of the ALJ's specific findings on any element of the paragraph B or C criteria, and failed to cite any specific evidence in support of a Listing applying, plaintiff had not met her burden). Thus, the Court is not addressing this issue in detail. There is no legal error and the ALJ's findings regarding Criteria C are supported by substantial evidence.

crouch; understand, remember, and carry out one to two step instructions; and occasionally interact with the general public." (Tr. 147). The only difference is that when Plaintiff was not sober, he could only "**frequently** maintain attention and concentration".[2] (Tr. 136) (emphasis added).

The question is whether there is substantial evidence to support the ALJ's conclusion that, while Plaintiff once struggled with attention and concentration, he has not struggled with this since he has become sober. Were Plaintiff only able to frequently maintain attention and concentration after sobriety, the vocational expert would have found Plaintiff could not perform any full-time work. (Tr. 49) ("Q[.] Okay. All right. Now, I'm going to alter the hypothetical and add to it that the individual –as Social Security defines the term, frequently, the individual can frequently maintain attention and concentration. Then what? A[.] At that point, Your Honor, my opinion is that person would not be able to maintain full-time competitive work.").

The ALJ relied on Dr. Lambert, Dr. George A. Bokelberg ("Dr. Bokelberg"), and Dr. Khushalani's medical opinions for both his substance abuse RFC and sober RFC analyses. From their opinions, the ALJ found that (i) Dr. Khushalani's opinion was the most persuasive, (ii) Dr. Lambert's opinion was partially persuasive, and (iii) Dr. Bokelberg's opinion applied only if Plaintiff was sober. (Tr. 143).

The first of these opinions involved a psychological consultative examination ("PCE") by Dr. Lambert with Plaintiff that was conducted on June 9, 2022, only six months after Plaintiff stopped abusing substances. (Tr. 1978). Based on the PCE, Dr. Lambert wrote the following:

---

[2] Plaintiff takes this to mean that the ALJ was concluding Plaintiff was able to focus better when he was not sober. This interpretation is incorrect. An RFC is a list of limitations, so when an RFC notes that a claimant "can frequently maintain attention and concentration[,]" it is describing a limitation that a claimant can only *frequently* maintain attention and concentration, as opposed to *always* being able to maintain attention and concentration.

"Mr. Richard is able to attend to and comprehend simple instructions, as he was compliant with all tasks required of the examination. Yet his performance on formal mental status testing reveals **significantly reduced attention/concentration** and impaired recent memory. These factors are likely to negatively impact comprehension as cognitive task demands increase." *Id.* (emphasis added). When this observation was made, Plaintiff was in "early remission" and "not completely in remission," it having been six months since Plaintiff last used opioids, and Dr. Lambert did not specify what Plaintiff's attention and concentration were like when he was still suffering from substance abuse or when full sobriety had been reached, as opposed to being in early remission. (Tr. 1977-78). Dr. Lambert concluded that "it is my opinion that he will experience significant difficulty maintaining pace secondary to decreased attention/concentration, poor memory, reduced frustration tolerance, and dysphoric mood." (Tr. 1978).

Courts have found that a doctor's opinion cannot serve as substantial evidence to support either a sober RFC or DAA RFC when it is unclear whether the opinion regards a person's sober status or DAA status. *See Cripps v. Saul,* No. 3:19-CV-1501, 2020 WL 3979681, at *8 (W.D. La. June 29, 2020), *report and recommendation adopted,* No. 3:19-CV-1501, 2020 WL 3979670 (W.D. La. July 14, 2020) (medical opinion that plaintiff had attention/concentration issues and did not "distinguish between periods of [drug] use and abstinence" could not serve as substantial evidence to support RFC that plaintiff did not have attention and concentration once sober); *see Vanacor v. Kijakazi,* No. CV 22-1325, 2023 WL 3939783, at *15 (E.D. La. Mar. 9, 2023), *report and recommendation adopted,* No. CV 22-1325, 2023 WL 3935029 (E.D. La. June 8, 2023) ("As this assessment[, noting plaintiff's concentration seemed fair with medication management,] was performed at a time when the effects of Plaintiff's DAA may or may not have abated, and Dr. Fontenelle did not distinguish between Plaintiff's mental limitations while on and off substances,

8

his opinion cannot [] serve as a basis for the . . . conclusion that Plaintiff would be off task 20% of the time while using substances but not if he ceased his substance use.").

Dr. Lambert assessed Plaintiff at a time when he was "not completely in remission[.]" (Tr. 1977). Because it is not clear Plaintiff was entirely sober—i.e., not being affected by drugs, alcohol, or withdrawal symptoms—at the time Dr. Lambert assessed him, Dr. Lambert's opinion cannot serve as substantial evidence for an RFC determination that Plaintiff has no concentration or attention issues while he is sober. If anything, it likely contradicts that determination. Further, as it appears Plaintiff was not using drugs at the time of the assessment, Dr. Lambert's opinion also cannot serve as substantial evidence for an RFC determination that Plaintiff has concentration or attention issues when he is not sober. The ALJ's RFC's must therefore be supported by Dr. Bokelberg and/or Dr. Khushalani's opinions.

It does not appear from the record that Dr. Bokelberg ever met with Plaintiff. Instead, on June 22, 2022, he reviewed the record and the June 9, 2022 PCE before opining that Plaintiff had attention limitations that impacted his ability to "sustain attention to complex tasks" but did not limit his ability to "maintain the attention to carry out simple (1-2 step) tasks[.]" (Tr. 238). It is clear from the phrasing of the opinion that it is primarily based on Dr. Lambert's opinion, it is during the same timeframe, and Dr. Bokelberg did not specify whether Plaintiff's ability to concentrate on two-step tasks was an ability Plaintiff had when he was sober, when he was suffering from his DAA, or when he was in treatment during recovery/remission. In the "explanation" section, Dr. Bokelberg does not identify the specific record documentation used to support his conclusions or differentiate from Dr. Lambert. This Court also finds that this opinion does not provide substantial evidence for the RFCs found by the ALJ.

9

Whether the ALJ's RFC's are supported by substantial evidence thus rests on Dr. Khushalani's opinion. At the hearing on October 26, 2023, when Plaintiff had been sober for nearly two years,[3] Dr. Khushalani gave the following testimony:

> Q   Okay, So are you able – well, what, if anything, is your opinion with respect to the existence of any severe medically determinable impairment?
>
> A   Well, he certainly has severe impairments that include major depressive disorder and generalized anxiety. He certainly is sober now. He's had extensive use of drugs and alcohol and opioids in the past. He also has chronic pain. So I think after his sobriety, it's not clear to me that the severity of mental health is such that he would meet a Listing. The impression that is given by the record is that the severity was mostly when he was using, now that he's sober, he's reasonably stabilized on medicine that they want to see him every three to six months. So I'm not having the record. Yeah. He has those severe, but it seems like he's reasonably stabilized, if he's being seen only every three to six months.
>
> . . .
>
> Q   All right. All right. So what limitations, if any, would you place on this individual, since sobriety?
>
> A   He would be limited to simple tasks and occasional public contact.
>
> . . .
>
> Q   Okay. But are you able to – is there anything that you have in front of you that would suggest that his symptoms are from the substance abuse and not just the mental health in its own right?
>
> A    . . . Prior to his sobriety, there's a mixture of the substance abuse and his mental health, so most of the symptoms cannot be differentiated at that time, but since his sobriety, he has said he continues to be depressed and anxious.
>
> . . .
>
> Q    . . . Would you opine that this individual would be falling off task in a work setting more than 10% of the day?
>
> A   Not if he's limited to simple tasks.

(Tr. 38-44). None of Dr. Khushalani's testimony specifically addresses Plaintiff's attention or concentration abilities, whether sober or not, although the final question above does address his ability to remain "on task." Dr. Khushalani acknowledges that based on the record, most of the

---

[3] This is aside from one instance of Plaintiff using "Adderall/oxy" for a few weeks in January of 2023. (Tr. 2128).

symptoms cannot be differentiated. He draws support based on the Plaintiff's current sobriety, but acknowledges continued symptoms that could be attributed to the Plaintiff's general mental health. At most, Dr. Khushalani points to a reduction in treatment appointments to every 3-6 months. This alone does not support a conclusion that the prior limitations are no longer present or even treatable. Dr. Khushalani acknowledges as much. (Tr. 37 "So it is hard for me to say what the severity is with treatment"). In the alternative, it is insufficient for any meaningful judicial review. Nothing else is provided by Dr. Khushalani in support of his testimony.

The medical record, on its own, fails to provide substantial evidence support the RFC's reached by the ALJ. Accordingly, the Court cannot conclude that any error was harmless. Plaintiff was generally noted as having normal attention and concentration from February 6, 2018 to July 7, 2021, while he was suffering from substance abuse. (Tr. 594; 604-608; 665; 653-657; 695; 697-698; 751; 767; 836; 967; 1316; 1322; 1328; 1334; 1337; 1340; 1343; 1346; 1356; 1361; 1366; 1700; 1702; 1706; 1708; 1955; 1985). During this time range, the only medical records noting attention and concentration difficulties were dated March 21, 2018, April 4, 2019, April 13, 2021, and April 16, 2021. (Tr. 598; 620; 1354; 2035; 2063). This changed in August of 2021 as Dr. Richard C. Robertson noted Plaintiff had Attention Deficit Hyperactivity Disorder from August 18, 2021 to November 22, 2021. (Tr. 1991; 1995; 2010; 2016; 2019). These issues did *not* disappear once Plaintiff was sober; attention and concentration difficulties were noted multiple times after December 14, 2022. (Tr. 1978; 2120; 2176; 2189; 2190; 2228; 2241).

It is clear from the record and the available medical opinions that Plaintiff struggled with attention and concentration difficulties while he was attempting to achieve complete sobriety. It remains to be discovered whether this problem continued, got better, or worsened once Plaintiff was sober.

The record before the Court does not provide substantial evidence for the ALJ's conclusions that Plaintiff's DAA RFC should include attention and concentration limitations while his sober RFC should not. As no substantial evidence supports the inclusion of concentration or attention limitations for Plaintiff's DAA RFC but not his sober RFC, this Court cannot affirm the ALJ's decision, and must remand. The medical opinions relied on by the ALJ in support of his RFC's fail to address or provide support for the differences between Plaintiff's concentration and attention abilities when he was sober versus when he was not, and the record fails to show Plaintiff's attention or concentration issues disappeared after sobriety. On remand, the ALJ shall develop the record to support any decision to include attention and concentration limitations in Plaintiff's substance abuse RFC but not in his sober RFC. An additional medical opinion regarding Plaintiff's attention and concentration abilities after sobriety is recommended.

## V.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Commissioner's decision be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this Order.

Signed in Baton Rouge, Louisiana, on June 24, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**